**UNITED STATES of America**

v.

**Priscilla Dominguez LAURA, Appellant.**

**No. 79–1102.**

United States Court of Appeals,
Third Circuit.

Argued July 12, 1979.

Decided Oct. 5, 1979.

As Amended Oct. 15, 1979.

Paul Casteleiro (argued), Law Offices of Michael Kennedy, New York City, for appellant.

Peter Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, App. Div., James J. Rohn (argued), Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS, ROSENN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

### I.

The right to the assistance of counsel is a critical element of our American system of jurisprudence. A defendant's decision to exercise that right and to place his liberty and possibly his life in the hands of an attorney of his choice may not be lightly tampered with. In this case, the district judge dismissed one of the defendant's attorneys without making any findings to justify that dismissal. Because we believe that this dismissal without adequate findings may have violated the defendant's right to counsel, we will reverse the decision of the district court and will remand for further proceedings consistent with this opinion.

### II.

In February 1976 Priscilla Dominguez Laura, the appellant, was indicted in the Eastern District of Pennsylvania under two counts of a five-count indictment which charged eleven people with conspiracy to import cocaine, Count 1, importation of cocaine, Count II, conspiracy to distribute cocaine, Count III, and possession with intent to distribute cocaine, Counts IV and V.[1] Priscilla Laura was charged under Counts I and II, and her husband, Anthony Laura, was charged under all five counts. In October 1976 she pled guilty to Counts I and II and received a five-year probationary sen-

---

1. 21 U.S.C. § 963; 21 U.S.C. § 952 and 18 U.S.C. § 2; 21 U.S.C. § 841 and 18 U.S.C. § 2, respectively.

tence under the Youth Corrections Act.[2] Her husband also pled guilty; he received a sentence of two years' imprisonment and three years' special parole. Throughout the proceedings Priscilla and Anthony Laura were represented by the same counsel.

In August 1978 Priscilla Laura was convicted in a Florida federal court for distribution and possession of cocaine and received a sentence of two years' imprisonment and three years' special parole.

In September 1978 Laura's supervising probation officer petitioned in the Eastern District of Pennsylvania for the revocation of Laura's probation. Following an evidentiary hearing in October 1978, the United States Magistrate found probable cause for violation of probation. In November 1978 Laura filed a Motion to Withdraw Guilty Plea and to Vacate Sentence pursuant to Rule 32, Fed.R.Crim.P. and Rule 35, Fed.R. Crim.P. She argued that her 1976 Pennsylvania sentence was invalid because she had been denied her sixth amendment right to counsel and because the district judge had not complied with the requirements of Rule 11, Fed.R.Crim.P., when he accepted her plea.

Until the December 1978 violation of probation proceeding Priscilla Laura was represented solely by Paul Casteleiro. At that time the trial judge ordered Laura to get local counsel. In response to this order she retained James Rothstein, a member of the bar of the United States District Court for the Eastern District of Pennsylvania. Subsequently, Laura made a motion to transfer or reassign her case to another judge in the Eastern District of Pennsylvania. She asserted that the judge who was considering the motions on her Pennsylvania conviction may have been biased against her local counsel James Rothstein. She alleged that the judge had a "current personal interest in favor of" a corporation which had sued certain defendants in a state court, that the trial judge had been listed as "an expected witness" in the pre-trial memoranda, and

that Rothstein represented the defendants in the state court proceeding, thus opposing the trial judge's alleged interest.

On December 28, 1978, before ruling on Laura's motion to withdraw her guilty plea, the trial judge dismissed Rothstein. We use the term dismissal purposely because when the trial judge ruled, "Therefore, I will order your withdrawal from this case, Mr. Rothstein, and I will sign an appropriate order to that effect. Thank you", he was dismissing Mr. Rothstein from the case despite counsel's and the defendant's objection. The following colloquy took place.

MR. ROTHSTEIN: I feel that my duty in this case is to Miss Laura as her local counsel. I placed in Miss Laura's hands the question of whether or not she wished that I withdraw as her local counsel. I intend to be bound by her instructions. If she wishes that I withdraw, then I will request the Court to withdraw.

*My statement in paragraph 6 is stated to clarify that I placed that question to Miss Laura as to whether or not she wished me to withdraw. She stated that she did not. Therefore, I do not at this time ask the Court for leave to withdraw.*

THE COURT: All right. Anything else in regard to the matter before me? From anyone?

MR. CASTELEIRO: No, your Honor.

MR. ROTHSTEIN: No.

THE COURT: All right, Mr. Rothstein. Paragraph 6 of the petition that you have filed, as I said a moment ago, states that you offered to withdraw as counsel in the Priscilla Laura matter. I will treat that offer to withdraw as a petition or as a motion to withdraw as counsel. I will grant the motion and permit you to withdraw as counsel in this case.

I find that Paul Casteleiro, who is a member of the New York Bar is the principal counsel in this case, the *Priscilla Laura* matter; that he has prepared all of the papers, all of the motions, *other than the motion to transfer* which is before me

---

2. The Youth Corrections Act provides for special sentencing of persons who are less than 22 years of age. 18 U.S.C. §§ 5005–5026.

today; that he had done, up *until very recently,* all of the legal work in respect to the Priscilla Laura matter; that you have been local counsel, you continue to be local counsel; that your familiarity with this case is very recent; that at the time you were retained, Priscilla Laura had never heard of you and you never heard of her and the two of you had not met.

It is also the law that a person is not entitled to a particular counsel. I shall not require in this case that there be local counsel. We can communicate with Mr. Casteleiro effectively. He has been a perfect gentleman throughout these proceedings and I am confident there will be no problem requiring the appearance of local counsel.

Therefore, *I will order your withdrawal from this case,* Mr. Rothstein, and I will sign an appropriate order to that effect. Thank you.

Appellant's App., at 121–23. (emphasis added)

Thus he dismissed Rothstein without making any findings about the dismissal, and reasoned that Laura was left with adequate representation.

After dismissing Rothstein, the judge proceeded to consider Laura's motions to withdraw her guilty plea and vacate her sentence. Both motions were denied. The trial judge then found Laura in violation of her probation. He revoked her probation and sentenced her to two years' imprisonment and three years' special parole. Casteleiro represented Laura throughout this portion of the hearings.

Laura has appealed to this court. She argues that her guilty plea on the 1976 federal indictment should be withdrawn because she was denied the right to effective assistance of counsel by the joint representation of her and her husband by Robert

Kalina (in 1976 Casteleiro did not participate in the defense of Priscilla Laura or her husband) and because the trial judge did not comply with Rule 11, Fed.R.Crim.P. She further asserts that her motion to transfer should have been granted because of the possibility of judicial bias. We find that on the present record the dismissal of James Rothstein may have violated Laura's sixth amendment right to counsel and that the dismissal may have tainted the proceedings that followed. We will therefore remand to the district court without reaching Laura's claims as to the validity of her original 1976 conviction.

### III.

▇ The sixth amendment to the Constitution guarantees to any criminal defendant the right "to have the Assistance of Counsel for his defense." [3] The importance of that right has been recognized by a ceaseless stream of Supreme Court decisions that have mandated that a vast array of defendants who would otherwise "fac[e] the danger of conviction because [they do] not know how to establish [their] innocence," *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), have the aid of a trained attorney when confronted by "[g]overnments, both state and federal, [who] quite properly spend vast sums of money to establish machinery to try defendants accused of crime." *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). *See, e. g., Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The reasoning underlying these decisions makes it clear that the sixth amendment generally protects a defendant's decision to select a particular attorney to aid him in his efforts to cope with what would otherwise be an in-

---

**3.** U.S. Constitution, VI Amendment provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

comprehensible and overpowering governmental authority. While the right to select a particular person as counsel is not an absolute right, the arbitrary dismissal of a defendant's attorney of choice violates a defendant's right to counsel.

Embodied within the sixth amendment is the conviction that a defendant has the right to decide, within limits, the type of defense he wishes to mount. *See Faretta v. California, supra; Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). It is from this principle and belief that the defendant's right to select a particular individual to serve as his attorney is derived. For the most important decision a defendant makes in shaping his defense is his selection of an attorney. The selected attorney is the mechanism through which the defendant will learn of the options which are available to him. It is from his attorney that he will learn of the particulars of the indictment brought against him, of the infirmities of the government's case and of the range of alternative approaches to oppose or even cooperate with the government's efforts.

As the Supreme Court has noted:

Even the intelligent and educated layman has small and sometimes no skill in the science of law . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. *Powell v. Alabama,* 287 U.S. at 69, 53 S.Ct. at 64.

Not only does the selection of an attorney demark the sphere of defense strategies a defendant will have presented to him; with his selection he may also give his attorney the authority to make decisions for him. For once a lawyer has been selected "law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas." *Faretta v. California,* 422 U.S. at 820, 95 S.Ct. at 2534.[4]

We would reject reality if we were to suggest that lawyers are a homogeneous group. Attorneys are not fungible, as are eggs, apples and oranges. Attorneys may differ as to their trial strategy, their oratory style, or the importance they give to particular legal issues. These differences, all within the range of effective and competent advocacy, may be important in the development of a defense. It is generally the defendant's right to make a choice from the available counsel in the development of his defense. Given this reality, a defendant's decision to select a particular attorney becomes critical to the type of defense he will make and thus falls within the ambit of the sixth amendment.

Further, the defendant's decision to select a particular counsel will affect other constitutional rights. For example, a defendant, on the advice of counsel, may decide not to object at trial to the introduction of evidence seized in violation of his fourth amendment rights. This decision may preclude any collateral review of the fourth amendment violation. *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). While "only a deliberate or considered bypassing or waiver of the opportunity to raise the issue" will preclude collateral attack, an attorney's advice will be weighed in evaluating whether the decision was made deliberately. *See United States*

---

4. *See also* ABA Standards Relating to the Administration of Criminal Justice, The Defense Function (1971), quoted in *Faretta* and The Personal Defense 65 Cal.L.Rev. 636, 638–39 nn. 6 & 7 (1977).

Section 1.1(a) provides:

Counsel for the accused is an essential component of the administration of criminal justice. A court properly constituted to hear a criminal case must be viewed as a tripartite entity consisting of the judge (and jury, where appropriate), counsel for the prosecution, and counsel for the accused.

Section 5.2(b) states:

The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.

*ex rel. LaMolinure v. Duggan,* 415 F.2d 730, 731 (3d Cir. 1969).

We also note that the ability of a defendant to select his own counsel permits him to choose an individual in whom he has confidence. With this choice, the intimacy and confidentiality which are important to an effective attorney-client relationship can be nurtured.

Thus, if a defendant chooses a particular counsel, the sixth amendment prevents a court from taking any "arbitrary action prohibiting the effective use of [a particular] counsel." *United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir. 1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).

In reaching this conclusion we are not suggesting that a court lacks any authority to dismiss a defendant's counsel, or to reject a defendant's decision to select a particular individual for his defense. This court has already recognized that "there is no absolute right to a particular counsel," and the trial judge has some discretion to effect the defendant's selection of counsel. *Id.* For example, unless a defendant can show good cause, *e. g.,* a breakdown in communication, the court may deny an indigent defendant's wish to obtain different court-appointed counsel. *See United States v. Young,* 482 F.2d 993 (5th Cir. 1973). Also, in certain circumstances, a court may deny a defendant's attempt to obtain new counsel immediately before trial. *See United States ex rel. Carey v. Rundle, supra.* And a court, under its supervisory authority, if it deems it necessary, may dismiss counsel because the defendant would otherwise be inadequately represented. *United States v. Dolan,* 570 F.2d 1177 (3d Cir. 1978).

▪ Given the precepts discussed above, it would certainly have been error if in this case the trial judge had ordered dismissal of the defendant's primary and lead counsel, Paul Casteleiro, in order to eliminate any possible conflict between the judge and lead counsel. The question remaining here is whether there are different standards applicable to the dismissal of "local counsel." On this limited record we find no basis in law to distinguish treatment of local counsel from primary or lead counsel. Apparently local counsel does serve an important function because the rules of the Eastern District of Pennsylvania require local counsel, E.D.Pa.R. 10; and the judge in this case directed the defendant to obtain local counsel.

Moreover, it seems clear to us that, at the very least, local counsel may be of particular assistance to a defendant confronting sentencing, as local counsel may be aware of a local judge's unique approaches or preferences. Certainly when one is dealing with sentencing and the extraordinary discretion allowed each judge, we would be disregarding the reality of legal life if we failed to recognize that there are several nuances—even about judges—which are relevant in the sentencing process. If local counsel did no more than offer those insights his contribution could be invaluable.

Except for the limitation that we set forth herein, a judge cannot dismiss local counsel because counsel's participation was, in the eyes of the judges, modest or miniscule. The gravamen of defendant's complaint in this case must not be lost sight of. Here the defendant filed a motion to transfer claiming that there was a possible conflict between her counsel and the judge because of the "current personal interest" the judge had in a civil suit pending in the state court where local counsel represented persons adverse to the judge's interest. Instead of ruling on the motion to transfer and determining whether there was a conflict which would warrant granting the motion, the trial judge eliminated the potential conflict by eliminating the local counsel.

He made no findings as to the possibility of a conflict of interest between him and Rothstein; he made no finding that Laura had in anyway acted improperly be retaining Rothstein or by wishing to continue to retain him; he made no finding that Laura or Rothstein knew of the potential conflict when she retained Rothstein; he made no finding that Rothstein improperly delayed

the motion to transfer;[5] and he made no finding that the court's interest in the orderly administration of its caseload would be jeopardized by granting the motion to transfer. Under these circumstances, the dismissal of Laura's counsel of choice cannot be countenanced.

We do not consider it important that Laura originally retained Rothstein as a result of the trial court's request that she have local counsel. By the time of the hearing Rothstein was one of Laura's counsel of choice and we must evaluate her decision in that light.

Nor do we consider it decisive that after the dismissal of her local counsel Laura continued to have the services of Casteleiro. By the time of her hearing, she had a defense team composed of two attorneys who may have served distinct and important functions on her behalf. As she wished to retain both attorneys we can only presume that she felt that she needed both attorneys. That choice is hers to make and not the court's, unless some appropriate justification for the dismissal is provided.

■ Moreover, as long as Rothstein performed a defense function, we do not believe that the defendant should be faced with the burden of proving the importance of his assistance. Therefore, Laura need not show that the dismissal was prejudicial. The right to counsel is among those "constitutional rights [which are] so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California,* 386 U.S. 18, 23 and n. 8, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ We make no finding on the merits as to whether Laura's probation should have been revoked, or whether her original sentence and guilty plea of 1976 were valid.

Certainly it is within the discretion of a trial judge to revoke the probation where a guilty plea had been entered validly and where the defendant was involved in a serious crime during her probationary period. However, regardless of the validity of the trial judge's decision on the merits, there is no justification here for dismissing her trial counsel and thereby precluding him from assisting her in her defense. The challenge to her guilty plea and to the revocation of her probation was rejected in a proceeding where the defendant's sixth amendment rights may have been violated. If this is the case, the judge's decisions on the merits may not stand.

Trial judges have an arduous task in dealing with an excessive caseload while attempting to decide fairly the myriad issues presented daily. Like us, they cannot always be errorless; when the facts of a case are isolated on appeal and focused on with greater specificity, is it obvious that often some aspects considered decisive by the appellate court had not been adequately reflected upon by the trial judge in the crunch of the caseload. This factor probably occurred in this case since a reading of the record indicates that the learned trial judge was appropriately concerned about a reasonably prompt disposition of his substantial caseload. He desired to move this case with reasonable dispatch. But such dispatch, without adequate findings, cannot justify the ruling below.

We will therefore remand this case to the district court. On remand, the district court may either grant the defendant's motion to transfer without considering the conflict of interest issue; or it may make findings on the question and act in accord with its findings.[6]

---

5. The judge specifically asked Rothstein why the motion had been filed so close to the time of the hearing. In response, Rothstein outlined his efforts to determine whether the motion was necessary and to determine Laura's feelings as to whether he should withdraw. The record suggests that Rothstein acted in a timely manner and therefore the timing of the motion would not serve as a basis to dismiss Rothstein. Appellant's App., at 117–19.

6. We express no judgment as to the propriety of dismissing counsel if a conflict exists. However, we note that if a conflict exists, 28 U.S.C. § 455 may be employed to transfer Laura's case to another judge.

> 28 U.S.C. § 455 provides in pertinent part:
> (a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which

Of course, if the matter is transferred to another judge, the sentence on the revocation of the probation must be vacated, so that the transferee judge may decide all of the issues *ab initio.*

ADAMS, Circuit Judge, concurring in the result.

Although I agree with the result reached by Judge Higginbotham, I write separately because I view the issue in this matter from a different perspective.

This is not a case in which a defendant has been forced to face "incomprehensible and overpowering" prosecutorial forces alone, without the assistance of counsel.[1] Nor is it a case in which a defendant's choice of trial strategy has been impeded by the trial court.[2] Rather, as I see it, the issue posed by this appeal is whether a defendant, who has been required to retain local counsel, may hire an attorney who has a conflict with the trial judge and then seek to recuse the trial judge because of the conflict.

The district court judge who presided over this case also presided over the criminal proceedings that resulted in Mrs. Laura's pleading guilty to conspiracy and importation of cocaine in 1976. During the 1976 proceedings, Mrs. Laura and her former husband, one of her codefendants, were represented by Robert I. Kalina, Esquire. Prior to hearing the pretrial motions in that case, the district judge ordered Mr. and Mrs. Laura to obtain separate counsel. Both defendants, through their attorney, moved to vacate that order. The district judge then carefully explained to Mrs. Laura the problem of having the same attorney and the conflict it posed. Mrs. Laura nevertheless elected to keep the one attorney, and the judge permitted the Lauras to continue jointly to employ Mr. Kalina. Mr. Kalina represented both Mr. Laura and Mrs. Laura through the time of their sentencing in 1977; Mrs. Laura was sentenced to five years of probation.

In August 1978, Mrs. Laura was convicted in a Florida federal court of illegally possessing and distributing cocaine, and was sentenced to two years in prison and three years on special parole. In September 1978, Mrs. Laura's supervising probation officer petitioned the district court to revoke her probation that had been imposed in the earlier Eastern District Court prosecution. Following an evidentiary hearing in October, a United States Magistrate found probable cause to revoke probation. In November, Mrs. Laura filed a motion with the district court to withdraw her guilty plea and to vacate her sentence.[3] She claimed that her 1976 conviction was invalid under the sixth amendment because the district court failed to order her and Mr. Laura to retain separate counsel at the time they were negotiating their respective pleas of guilty.

his impartiality might reasonably be questioned.

. . . . .

(e) No justice, judge, magistrate, or referee in bankruptcy shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

. . . . .

1. *Compare Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (state's refusal to appoint counsel for indigent defendant in a noncapital felony trial violated sixth amendment as applied to the states through the fourteenth amendment); *Powell v. Alabama,*

287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (state court's refusal to appoint counsel for indigent defendant in capital case violated sixth amendment as applied through due process clause of fourteenth amendment).

2. *Compare Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (sixth and fourteenth amendments guarantee criminal defendant right to defend himself without assistance of attorney); *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (state's requirement that criminal defendant who desires to testify on his own behalf must do so prior to presentation of any other defense testimony violates due process and right to effective assistance of counsel).

3. Fed.R.Crim.P. 32(d), 35.

Throughout the 1978 proceedings, Mrs. Laura was represented by Paul Casteleiro, Esquire, a member of the New Jersey Bar. At the probation revocation hearing, the district court ordered Mrs. Laura to retain local counsel as required by Local Rule of Criminal Procedure 2 of the District Court for the Eastern District of Pennsylvania.[4] Mr. Casteleiro then hired James Rothstein, Esquire, a member of the Berks County bar. Mr. Rothstein was defense counsel in a case in a Pennsylvania state court in which the district judge was listed as an expected witness for the defendant. Mrs. Laura, acting through Mr. Rothstein, then filed a motion requesting the judge to recuse himself because of the apparent conflict between him and Mr. Rothstein. The district judge interpreted the motion as also offering that Mr. Rothstein withdraw from the case[5] and, over Mrs. Laura's objection, ordered Mr. Rothstein to withdraw.

■ As Judge Higginbotham points out, the right of a criminal defendant to be represented by counsel of her choice is an important right—one that may not lightly be frustrated. But this right is not absolute, and a court may, for substantial reasons, refuse to permit the defendant's choice of counsel to participate in a case.[6]

---

4. Local Rule of Criminal Procedure 2 applies Local Rule of Civil Procedure 10 to criminal trials.

5. The disputed portion of Mrs. Laura's motion to transfer the case to another judge read as follows:

> (6) Local counsel for Defendant, Priscilla Dominguez Laura, has advised said Defendant, Priscilla Dominguez Laura, of the facts set forth hereinabove and has offered to withdraw from the matter of *United States of America vs. Priscilla Dominguez Laura* and obtain substitute local counsel for the Defendant herein. ·
> (7) Defendant, Priscilla Dominguez Laura, has informed James S. Rothstein, Esq. that she does not wish him to withdraw as her local counsel in the case at bar.
> WHEREFORE, Defendant respectfully requests the Court (i) to waive Federal Rule of Criminal Procedure 45 and Local Rule of Criminal Procedure 11 and (ii) to transfer the above-captioned case to the Clerk of this Court for re-assignment.

App. 247. Although the language is somewhat confusing, the district court's interpretation of

■ Thus, the district court's decision to dismiss Mr. Rothstein may be justifiable; but, like the majority, I am unable to address that issue in a thoughtful manner because the district judge did not set forth the reasons for his ruling. A hearing on this issue followed by a written explanation not only would facilitate review by the Court, but also would help to ensure that Mrs. Laura's sixth amendment rights are not impaired without adequate justification.

Because of the importance of the right at stake, and the closeness of the issue, a few examples of the facts I would deem relevant to an adjudication of this question might be helpful to the district court. Although the district court *sua sponte* ordered Mrs. Laura to obtain local counsel, it would not necessarily be unreasonable for the court to require her to select an attorney who does not have an apparent conflict with the trial judge who has participated in the proceedings for several years. Thus, if the district court finds that Mr. Rothstein was selected because of his possible conflict with the trial judge, for the purpose of forcing the judge out of this case, the dismissal of Mr. Rothstein might be justifiable.[7] Similarly, findings by the district

---

it as an offer that Mr. Rothstein withdraw is questionable. For the remainder of this opinion, I will assume that the district court dismissed Mr. Rothstein.

6. *See United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978), in which we upheld a district court's order, over both defendants' objections, that an attorney who represented codefendants in a single criminal trial withdraw as counsel for one defendant. The district court had made extensive findings that the joint representation presented an actual conflict of interest. *United States v. Garafola*, 428 F.Supp. 620 (D.N.J. 1977), aff'd sub nom. *United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978).

7. A judge will frequently recuse himself, for example, from participating in cases in which one of the parties is represented by the law firm with which the judge was associated prior to coming on the court, and from cases implicating organizations for which the judge, in the past, has been a director or trustee. Thus, in the absence of some means of permitting the court to refuse to accept a litigant's choice of local counsel, it would be relatively facile for

court that Mr. Rothstein and Mrs. Laura have had little contact regarding this case, or that Mr. Rothstein's participation in the preparation of the proceedings has been slight, might also weigh heavily in favor of a decision to dismiss Mr. Rothstein. The trial judge's long involvement in both this case and the 1976–1977 criminal proceedings out of which the substantive issue of the present appeal arises, also might support a decision to require Mr. Rothstein to withdraw. On the other hand, evidence that Mr. Rothstein had assumed an active role in the preparation of Mrs. Laura's motions prior to the district court's decision to dismiss him, or that Mr. Rothstein was hired for his expertise in this type of case, beyond his mere status as local counsel, might militate against a dismissal decision.

The right to select counsel of one's choice is a critical constitutional right that may be abridged only for substantial reasons. Neither this Court nor a district court can evaluate, under the facts of a particular case, whether the right has been unduly fettered unless the issue has been briefed and argued, and the trial judge sets forth findings to justify his decision. Accordingly, I agree that the matter should be remanded for a further hearing and for findings.

ROSENN, Circuit Judge, also joins in this opinion.

litigants to remove the judge assigned to their case simply by hiring as local counsel one who is involved in a separate matter with an organization with which the judge has been associated.