UNITED STATES of America

v.

Priscilla Dominguez LAURA.

Crim. No. 76–82–10.

United States District Court,
E. D. Pennsylvania.

Nov. 12, 1980.

Peter F. Vaira, U.S. Atty., James J. Rohn, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Paul Casteleiro, Newark, N. J., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The defendant, Priscilla Laura, has moved under Fed.R.Crim.P. 32(d) to withdraw her plea of guilty and vacate the

sentence imposed upon her pursuant to that plea. She alleges in support of her motion that there was a conflict of interest in that she and her husband were represented by the same counsel, that the trial judge did not comply with Fed.R.Crim.P. 11 when he accepted her plea, and that she was sentenced to an adult term of probation instead of a probationary term under the Youth Corrections Act. For the reasons hereinafter set forth, the defendant's motion will be denied.

## I. *Sixth Amendment Claim*

The defendant was indicted under two counts of a five count indictment in February of 1976 in the Eastern District of Pennsylvania. She was twenty–one (21) years of age at that time. In Count I, the defendant was charged with conspiracy to import cocaine, in violation of 21 U.S.C.A. § 963. Count II charged the defendant with importing cocaine, in violation of 21 U.S.C.A. § 952. Ten other people, including Anthony Laura, the defendant's husband, were named as defendants in the indictment. The defendant's husband was charged under all five counts of the indictment.[1] This case was originally assigned to another judge in this district. All of the defendants initially pleaded not guilty.

Both the defendant and her husband were represented by Robert Kalina, Esq. After a pretrial conference in April of 1976, the trial judge entered an order directing the defendant and her husband to obtain separate counsel on the ground that there was an apparent conflict of interest. In response to the trial judge's order, both defendants filed separate affidavits in which each stated that he and she desired to be represented by Mr. Kalina.

At a hearing on the pretrial motions on April 27, 1976, both the defendant and her husband stated on the record that they both desired to be represented by Mr. Kalina and waived their right to raise the conflict of interest issue. On the basis of their affidavits and their statements made at the hearing, the Court permitted Mr. Kalina to continue his representation of the defendant and her husband. After the hearing, the Government and the defendants entered into a plea agreement. Pursuant to the agreement, all of the defendants changed their plea from not guilty to guilty before the same trial judge in October, 1976. All of the defendants were sentenced pursuant to the plea agreement on June 20, 1977. The defendant received a sentence of probation for five years and her husband received a sentence of two years imprisonment with a special parole term of three years.

In August of 1978, while on probation, the defendant was convicted in the United States District Court for the Southern District of Florida for possession and distribution of cocaine, and in September, 1978 received a sentence of four years imprisonment with a special parole term of three years. Subsequent to her conviction and sentencing in Florida, a petition to revoke her probation was filed in this court with the trial judge. Prior to the probation revocation hearing, which was scheduled for December 28, 1978, the defendant, who was then being represented by another attorney, filed a motion to withdraw her guilty plea and vacate sentence. The trial judge ordered her to retain local counsel for this motion since her counsel was not a member of the bar of this court. She retained James Rothstein, Esq., a member of the bar of this court, as local counsel. The defendant then moved to have this motion transferred to another judge on the ground that there was a conflict of interest between the trial judge and her local counsel. The trial judge ordered Mr. Rothstein to withdraw from the case, and directed that her attorney, Mr. Casteleiro, proceed with the hearing on the motion without local counsel. After the hearing, the trial judge denied the defendant's motion to withdraw her guilty plea and vacate sentence, found her in violation of probation, revoked her probation, and sentenced her to a term of imprisonment of two years with a special parole term of three years.

---

1. Count III of the indictment charged certain defendants with conspiracy to distribute cocaine, in violation of 21 U.S.C.A. § 846. Counts IV and V charged certain defendants with possession with intent to distribute cocaine, in violation of 21 U.S.C.A. § 841.

The defendant filed an appeal. Our Third Circuit, in *United States v. Laura,* 607 F.2d 52 (3d Cir. 1979), stated:

> We find that on the present record the dismissal of James Rothstein may have violated Laura's sixth amendment right to counsel and that the dismissal may have tainted the proceedings that followed. We will therefore remand to the district court without reaching Laura's claim as to the validity of her original 1976 conviction. *Id.* at 55.

The *Laura* Court also stated that on remand:

> the district court may either grant the defendant's motion to transfer without considering the conflict of interest issue; or it may make findings on the question and act in accord with its findings.
>
> Of course, if the matter is transferred to another judge, the sentence on revocation of probation must be vacated, so that the transferee judge may decide all of the issues *ab initio.* *Id.* at 58–59.

The trial judge vacated the sentence on revocation of probation and initiated steps to have the matter transferred. The case is now on our docket.

The defendant was in Florida when the trial judge entered his order that she and her husband should retain separate counsel because of an apparent conflict of interest. Mr. Kalina telephoned her and told her of the trial judge's order. He stated that he was going to prepare affidavits for her and her husband setting forth their respective desires to have him represent both of them and waiving their rights to separate counsel. Mr. Kalina mailed an affidavit to her, which she signed, had notarized, and returned to Mr. Kalina. The affidavit, which was filed with the court, reads as follows:

> PRISCILLA LAURA, being duly sworn, deposes and says:
>
> I am the defendant in the above captioned action. I am married to Anthony Laura, a codefendant in this case.
>
> I have retained ROBERT I. KALINA, ESQ., 575 Lexington Avenue, New York, New York as my attorney in this matter. He is the attorney of my choice. My husband has retained him, and we have discussed this case and reviewed it. I perceive no conflict of interest in Mr. Kalina representing both myself and Anthony Laura and I desire to have Mr. Kalina continue to represent me while representing my husband in this matter. I hereby waive any claim to raise the issue at any stage of the proceeding of conflict of interest or lack of proper counsel.
>
> Mr. Kalina has informed me that the Court stated to him at a conference on April 13, 1976 that either myself or Anthony Laura should obtain other counsel, and that Mr. Kalina could not represent both of us. I respectfully submit that this deprives me of my Sixth Amendment right to counsel of my choice, an attorney, who I believe, under all the circumstances, will be most effective for me and will best represent my interests. Any other attorney would not be counsel of my choice but would be counsel forced upon me by order of the Court. I can afford to retain other counsel, but I believe my interests are being best protected by Mr. Kalina.
>
> I have been informed that this issue has not been raised by the Court initially, but by the Assistant United States Attorney. I know of no substantive reasons cited for the application other than that the prosecution might give discovery to one defendant that it might not give to another and that plea bargaining with one may someway effect [sic] the other. I do not wish to entertain plea bargaining and wish to go to trial in this matter if the Court decides the motions to dismiss the indictment herein adversely to me. Additionally, the Court must be aware that whatever discovery is given to the defense in this case will be shared between the defendants. To think otherwise, is an exercise in naivety [sic]. My defense is being burdened for some purpose I cannot perceive.
>
> As I understand it, there is a privileged relationship between my husband and myself that would preclude the last vestige of conflict of interest.
>
> WHEREFORE, I respectfully request that Mr. Kalina be allowed to remain as

my counsel while representing Anthony Laura as well in this matter.

Priscilla Laura /s/
PRISCILLA LAURA

Sworn to before me this
15th day of April, 1976
April 15, 1976

Linda Lazaroff /s/
Notary Public State of Florida At Large
My Commission Expires Feb 9 1980
Bonded Thru General Insurance Underwriters

As previously stated, after the trial judge had ordered the defendant and her husband to retain separate counsel, she and her husband appeared at a hearing on April 27, 1976. They requested that the trial judge rescind his order that they retain separate counsel. The transcript of that hearing shows that the trial judge asked Mr. Kalina:

to step forward with your clients and . . . have each of them make a statement on the record that will roughly parallel the information in the affidavit so there is no question that they understand their rights, that they waive them, that they wish you as their attorney, [and] believe there is no conflict of interest. (N.T. April 27, 1976, at 6).

In response to Mr. Kalina's questions, the defendant stated that Mr. Kalina was the attorney of her choice, that she perceived no conflict of interest in the representation of her and her husband by Mr. Kalina, that she waived her right to raise the conflict of interest issue, and that Mr. Kalina could best represent her interests while also representing her husband. The United States Attorney stated at the hearing that despite the waiver, he objected to the representation of the defendant and her husband by Mr. Kalina. He also stated in the defendant's presence:

we feel that the interest of Priscilla Dominguez Laura and the interest of [her husband] are completely different, that the culpability is somewhat different and that dual representation of each will either work to the detriment of both or perhaps to the benefit of both if every-

thing goes swimmingly. The point is there is an inherent conflict there because they cannot be represented [by Mr. Kalina]. (N.T. April 27, 1976, at 12).

The trial judge accepted the waiver of the defendant and her husband, ruled that Mr. Kalina could continue to represent them in pretrial proceedings, and told the United States Attorney to file a motion at any time during trial if he believed that there was a conflict of interest requiring separate trial counsel.

On June 6, 1980, this Court held an evidentiary hearing on the defendant's motion to withdraw her guilty plea and vacate her sentence of probation. At the hearing, the defendant testified that Mr. Kalina, the attorney who represented her and her husband in all proceedings before the trial judge in 1976 and 1977, was hired and paid by her husband to represent both of them. The extent of her consultation with Mr. Kalina outside the presence of her husband was approximately ten minutes, although both she and her husband had conferred jointly with Mr. Kalina for long periods. The defendant testified that Mr. Kalina never explained the contents of the affidavit to her, provided her with no explanation of what was meant by a conflict of interest, and did not discuss the way in which a conflict of interest could arise in a plea bargaining situation. The defendant further testified at the hearing before this judge that she changed her plea to guilty pursuant to a plea agreement entered into by all of the defendants charged in the indictment. She stated that she was advised by Mr. Kalina that the plea agreement was an "all–or–nothing" deal, and that the agreement would not be accepted unless all of the defendants changed their pleas to guilty. Mr. Kalina told her that the plea agreement was extremely beneficial to her husband because he would receive a two year sentence pursuant to the plea agreement, whereas if he went to trial he would be convicted due to the overwhelming amount of evidence against him and could be sentenced to imprisonment for fifteen years. She also stated that until the plea agreement was offered, Mr. Kalina had assured her that she had no reason to fear

going to trial, but that after the plea agreement was offered, he told her that her decision not to change her plea would mean that her husband would receive a fifteen year sentence.

As heretofore pointed out, the defendant filed a motion to withdraw her guilty plea and vacate her sentence pursuant to Fed.R. Crim.P. 32(d) on the grounds that there was a conflict of interest in that she and her husband were represented by the same counsel, that the trial judge did not comply with Fed.R.Crim.P. 11 when he accepted her plea, and that she was sentenced to an adult term of probation instead of a probationary term under the Youth Corrections Act. At the hearing before this Court, the defendant testified that although Mr. Kalina had consistently advised her that she would be found not guilty if she stood trial, he told her that if she did not accept the plea agreement and plead guilty her husband would be convicted and would face a sentence of imprisonment of fifteen years, whereas under the plea agreement he would receive a sentence of imprisonment of two years.

In determining whether the defendant may withdraw her guilty plea on the ground that there was a conflict of interest in the representation of her and her husband by Mr. Kalina, this Court will be guided by the recent decision of the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).[2] In *Cuyler*, Justice Powell, writing for the majority, stated at pages 1718–19:

> *Holloway* [*v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)] reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest.

> . . . . .

> In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.

> . . . . .

> *Glasser* [*v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)] established that unconstitutional multiple representation is never harmless error . . . . Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. . . . But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

> . . . . .

> . . . We hold that the possibility of conflict is insufficient to impugn a criminal conviction.

On this record, the defendant has identified "an actual conflict of interest." However, we find that the record also demonstrates that this defendant executed a "knowing and intelligent" waiver of her "right to separate counsel." *Cuyler, supra,* at 1720–21 (Brennan, J., concurring). The trial judge played a positive role in insuring that the defendant's choice was made intelligently.[3] He held a pretrial conference at

---

**2.** In *Cuyler*, the Supreme Court reversed a decision of our Third Circuit. *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512 (3d Cir. 1979), rev'd, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Prior to the decision of the Supreme Court in *Cuyler*, our Third Circuit had only required a showing of possible, not actual, conflict of interest in order to establish that joint representation abridged the sixth amendment rights of a defendant.

**3.** Proposed Fed.R.Crim.P. 44(c) provides:

(c) Joint representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Proposed Rule 44(c) was to become effective on August 1, 1979. Congress, on July 31, 1979,

which he ordered the defendant and her husband to retain separate counsel on the ground that there was an apparent conflict of interest. After the Court entered its order, the defendant executed the above quoted affidavit and it was filed of record. The trial judge, by questions to the defendant in open court, assured himself that she had made a knowing and intelligent choice to have Mr. Kalina represent both her and her husband. The affidavit signed by the defendant stated that she perceived no conflict of interest in the representation of her and her husband by Mr. Kalina, and that she waived the right to raise the issue of conflict of interest at any stage. The affidavit further provided that Mr. Kalina would best represent her interests, that he was the counsel of her choice, and that she could afford to retain other counsel. This affidavit was mailed to her in Florida. She had ample time to read it before she signed it, and there is no evidence that her husband or Mr. Kalina coerced her into signing the affidavit. At the April 27, 1976 hearing, she was questioned on the record regarding this affidavit and she reaffirmed the statements contained in it. At that hearing she also heard the United States Attorney describe the nature of the conflict of interest between the defendant and her husband.

At the hearing before this Court in June 1980, the defendant testified that at the time she executed the affidavit, her attorney did not explain to her what was meant by a "conflict of interest." She did not, however, testify that she *did not understand* what is meant by a conflict of interest. Nor did she testify that she *did not understand* the meaning of the affidavit which she executed and about which she was questioned on the record at the bar of the court on April 27, 1976.

The defendant's motion in this case was not filed until after she had been sentenced to a four year term of imprisonment for a subsequent crime committed in the Southern District of Florida, and until after the petition to revoke her probation had been filed in this court. The change of plea pursuant to the plea agreement took place on October 18, 1976, but sentence was not imposed until June 20, 1977. This eight month period provided her with ample time to file a motion to change her plea, if she so desired. The record shows that the defendant and her husband were divorced subsequent to the imposition of sentence by the trial judge.

The defendant was twenty–two (22) years of age when she signed the affidavit waiving her right to separate counsel and when she testified before the trial judge on April 27, 1976 concerning the waiver. This Court observed that she is an intelligent woman, and the record shows that she attended college. As heretofore pointed out, she testified only that her attorney never explained to her what was meant by a conflict of interest; she did not testify that she did not understand what was meant by a conflict of interest or that her waiver was involuntary, and in the event she intended her testimony to convey to the Court the idea that the waiver was not knowing, voluntary, nor intelligent, the Court finds that her testimony is not credible. Although she may now regret her decision to accept probation pursuant to the plea agreement, this Court finds that in executing the affidavit waiving her right to representation by separate counsel, she made a knowing, voluntary and intelligent decision to be represented by Mr. Kalina.

## II. *Fed.R.Crim.P. 11 Claims*

The next ground asserted by the defendant in support of her motion is that the trial judge failed to comply with Fed.R.Crim.P. 11 when he accepted her change of plea from not guilty to guilty. The defendant specifically claims that the trial judge failed to comply with Rule 11(c)(1) and erroneously found that there was a factual basis for the defendant's plea under Rule 11(f).

■ On October 18, 1976, the trial judge accepted the change of plea of the defendant and seven of her co–defendants. In

postponed the effective date until December 1, 1980 or until and then only to the extent approved by Act of Congress, whichever is earlier. Pub.L. 95–42, 93 Stat. 326.

order to save time, the trial judge addressed many questions to the defendants as a group, and then asked each defendant for an individual answer.

Rule 11(c)(1) states in part:

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered. . . .

The record of the October 18, 1976 hearing shows that the trial judge explained the charges in each count of the indictment to the defendants. We find that the explanation given by the trial judge complied with Rule 11(c)(1). *Horsley v. United States*, 583 F.2d 670 (3d Cir. 1978); *Paradiso v. United States*, 482 F.2d 409 (3d Cir. 1973); *Woodward v. United States*, 426 F.2d 959 (3d Cir. 1970).

Rule 11(f) states:

Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

At the October 18 hearing the trial judge requested the United States Attorney to:

make a statement as to the factual basis of the Government's case against each defendant and I ask each defendant to listen carefully. (N.T. October 18, 1976, at 90).

With respect to the defendant, the United States Attorney stated that in the event the case went to trial, the Government would produce evidence showing that:

[O]n February 28, Hugh Patrick Breen, Diane Hudzik, Anthony Joseph Laura and Priscilla Dominguez Laura did proceed to Apartment B916, International Plaza Apartments, Miami, Florida, and there did meet Ben Gonzalez and Marianne Mullen Gonzalez. The purpose of that meeting was as follows: That the Gonzalez' were to receive a certain amount of money, to wit, approximately $5,000, for the use of their apartment to meet one John Doe Maurie, the Colombian connection and furthermore, for the services of

Ben Gonzalez getting the cocaine off the Avianca Airline.

The Government would show that Mr. Ben Gonzalez does in fact work for Avianca Airline.

We would continue to show on February 28, 1975, Breen, Ben Gonzalez, Marianne Gonzalez, Diane Hudzik, Anthony Joseph Laura and Priscilla Dominguez Laura did in fact meet one John Doe Maurie for the purpose of making the final payment of the $15,000 for the cocaine and for receiving the same.

The United States Attorney further stated that the Government's evidence would prove that on the evening the cocaine was received, it was tested by the defendant, her husband, and two other co–defendants. The trial judge then posed the following questions to the defendant:

THE COURT: I ask Defendant Priscilla Laura whether the statement made by the Government as to the Government's factual basis of its case against the defendants, particularly you, is a correct statement?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any comment or any correction or any addition?

THE DEFENDANT: No, sir.

THE COURT: Does Counsel have any comment?

MR. KALINA: No, sir.

(N.T. October 18, 1976, at 99).

The trial judge then found:

that the changes of plea are knowledgeable, voluntary and have a basis in fact that contains all the elements of the crimes charged in the indictment and I accept the changes of plea. *Id.* at 100.

■ The defendant was charged in Count I with a conspiracy to import cocaine in violation of 21 U.S.C.A. § 963. The record shows that the Government would have presented evidence that the defendant went with other co–defendants to a certain apartment in Miami, Florida for the purpose of paying approximately $5,000.00 for the use of the apartment to meet a "John Doe Maurie, the Colombian connection,"

and for the services of a Ben Gonzalez in "getting the cocaine off the Avianca Airlines." The Government's evidence would also have shown that the defendant "did in fact meet one John Doe Maurie for the purpose of making the final payment of the $15,000.00 for the cocaine and for receiving the same," and on the evening the cocaine was received, the defendant tested the cocaine along with her husband and two other co–defendants. This evidence, which would clearly have shown that the defendant entered into an illegal scheme and agreement with others for the purpose of importing cocaine and that she willfully participated in such a scheme, contains all of the elements of a conspiracy to import cocaine in violation of 21 U.S.C.A. § 963.

The defendant was charged in Count II with importation of cocaine, in violation of 21 U.S.C.A. § 952. The evidence that the Government would have presented at trial shows that the defendant participated with her husband and other co–defendants in paying money to meet with a "John Doe Maurie, the Colombian connection," and for the services of a Ben Gonzalez to receive cocaine which was coming into the United States. The Government would also have presented evidence that the defendant participated with her husband and other co–defendants in testing the cocaine. There is no question that the evidence which would have been presented at trial contained all of the elements of the crime of importation of cocaine, in violation of 21 U.S.C.A. § 952.

The defendant stated under oath at the bar of the court at the time her plea was taken that the statement made by the United States Attorney as to the factual basis of the Government's case against her was correct. She had no comment, correction or addition to the statement by the United States Attorney. For the foregoing reasons, we conclude that the finding made by the trial judge pursuant to Rule 11(f) was not erroneous.

■ Under Fed.R.Crim.P. 32(d), a court may permit the defendant to withdraw a guilty plea only "to correct manifest injustice," and the burden is on the defendant to show manifest injustice. *United*

*States v. Tiler*, 602 F.2d 30 (2d Cir. 1979); *Woodward v. United States*, 426 F.2d 959 (3d Cir. 1970). A post–sentence motion to withdraw a guilty plea under Fed.R.Crim.P. 32(d) is a collateral attack, *Woodward, supra*; and as in a motion to vacate under 28 U.S.C.A. § 2255, which is likewise a collateral attack, the defendant has the burden of alleging and proving specific prejudice from a violation of Rule 11 in order to be entitled to relief. *Horsley v. United States*, 599 F.2d 1265 (3d Cir.) (en banc), *cert. denied*, 444 U.S. 865, 100 S.Ct. 135, 62 L.Ed.2d 88 (1979). *See United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

■ The defendant did not offer any testimony that she did not understand the nature of the charges to which she pleaded, and did not present any testimony supporting her allegation that the evidence did not contain all of the elements of the crimes with which she was charged. Nor did she testify that she would not have pleaded guilty but for the trial judge's alleged violations of Rule 11. She has therefore failed to prove that she was prejudiced pursuant to *Horsley, supra*, 599 F.2d at 1269.

For the reasons hereinabove set forth, the defendant's motion to withdraw her guilty plea and vacate sentence on the ground that Rule 11 was violated will be denied.

III. *Failure of the Defendant to Receive A Sentence Under the Youth Corrections Act*

The final claim of the defendant is that the June 20, 1977 sentence imposed upon her by the trial judge was not in conformity with the terms of the plea agreement entered between the Government and the defendants. The defendant was sentenced to a five year term of adult probation. At the hearing before this judge, the defendant testified that she expected to receive a four year term of probation under the Youth Corrections Act (YCA), 18 U.S.C.A. § 5001 *et seq.*, in exchange for her plea of guilty.

The plea agreement between the defendant and the Government is a written document consisting of seven pages. It was read into the record in its entirety when the

**1356**

defendant and seven of the co–defendants changed their pleas on October 18, 1976. With respect to the defendants Priscilla Laura, M. Gonzalez, and D. Hudzik, the plea agreement states:

It is agreed between the parties that Diane Hudzik, Marianne Mullen Gonzalez and Priscilla Laura, in exchange for their plea of guilty and cooperation by themselves and the other co–indictees in Criminal No. 76–82, they [sic] will receive a probationary term. The length of said probationary term is to be determined by the Court.

The plea agreement did not promise a YCA term of probation to any of the defendants and the length of the probationary term was to be determined by the court. After the plea agreement was read into the record at the change of plea hearing, the trial judge directly questioned this defendant as follows:

THE COURT: I ask the defendant whether the plea bargain as stated by Mr. Mellon consisting of six paragraphs applying to all defendants and a seventh paragraph applying specifically to you, is the plea bargain as you understand it?

THE DEFENDANT: Yes, sir.

THE COURT: I ask counsel whether the plea bargain as stated is as you understand it?

MR. KALINA: Yes, sir.

(N.T. October 18, 1976, at 67).

This defendant then answered "No" to the following three questions asked by the trial judge:

1. Is there any agreement or understanding or has any promise or representation been made to you by any person except that disclosed in open court today concerning the sentence you will receive?
2. Is there any out–of–court agreement or understanding or has any out–of–court promise or representation been made to you by any person which requires you to make a false or untruthful statement in court today in these proceedings?
3. [O]ther than the plea bargain as stated and placed on the record, [has] anyone threatened or made any other promises in

any way to induce you to change your plea to guilty?

The defendant also answered "Yes" to the following question:

Do you clearly understand that you may not at a later time contend that there was any agreement or understanding or that any promise or representation was made to you by anyone other than that stated in open court today?

■ The record of the sentencing proceedings on June 20, 1977 indicates that neither the defendant nor her attorney objected to the imposition of the adult probationary term of five years upon the defendant. Furthermore, the defendant, at the time she pleaded guilty, was twenty–two (22) years of age. Her age placed her in the category of a young adult offender. Pursuant to 18 U.S.C.A. § 4216, the trial judge was required to find that she would benefit from a YCA sentence before he could impose a YCA sentence upon her. Neither the record nor the judgment and commitment order shows that the trial judge made such a finding. Although the defendant testified before this judge that Mr. Kalina had told her prior to sentencing that she would receive a four year YCA probationary sentence and that she expected to receive such a YCA sentence, the Court finds that her testimony in this regard is not credible. As previously pointed out, the defendant is an intelligent woman. The plea agreement was in writing and made no mention of a YCA probationary term. When questioned by the trial judge after the plea agreement was read into the record, the defendant stated that she understood it and that there were no other agreements or understandings concerning the sentence. At the time she received the adult sentence of probation, neither she nor her attorney took any exception, and the sentence was never questioned until after she had been sentenced in Florida for a subsequent crime. We therefore conclude that the defendant has not carried her burden of proving that her sentence was not in

compliance with the plea agreement between her and the Government, and her motion to withdraw her guilty plea and vacate sentence will be denied.

## IV. *Violation of Probation*

■ Because we have determined that the defendant's motion to withdraw her guilty plea and vacate sentence must be denied, we must now consider whether she violated her probation. At the hearing before this Court on June 6, 1980, the Government introduced into evidence, without objection, certified copies of the indictment and the defendant's judgment and commitment order in the criminal action in the United States District Court for the Southern District of Florida. These documents show that the defendant was convicted in Florida in August 1978 for possession and distribution of cocaine. The indictment charges that she committed the acts constituting these crimes in October 1977, which is during the probationary period imposed by the trial judge in this district. We therefore find that the defendant violated her probation.

## V. *Conclusion*

An order will accordingly be entered denying the defendant's Rule 32(d) motion to withdraw her guilty plea and vacate sentence. We shall order the defendant to be brought before this Court in connection with the revocation of probation and the imposition of sentence.