**Michael Joseph PARADISO and Anthony Richard Bonnacci, Appellants,**

v.

**UNITED STATES of America.**

No. 72–1705.

United States Court of Appeals, Third Circuit.

Submitted April 2, 1973.

Decided July 19, 1973.

As Amended Aug. 1, 1973.

Michael J. Paradiso and Anthony R. Bonnacci, pro se.

Amos Gern, William T. Pizzi, Asst. U. S. Attys., Newark, N. J., for appellee.

Before ROSENN and HUNTER, Circuit Judges, and BECHTLE, District Judge.

## OPINION OF THE COURT.

ROSENN, Circuit Judge.

This case raises recurring and important problems of what procedure constitutes compliance with Federal Rule of Criminal Procedure 11 and what circumstances justify the withdrawal of a guilty plea under federal rules and Santobello v. New York, 404 U.S. 257, 92 S. Ct. 495, 30 L.Ed.2d 427 (1972).

Appellants Paradiso and Bonnacci were indicted on April 16, 1969, along with several others, by a federal grand jury sitting in New Jersey, on a four count indictment charging conspiracy to possess stolen goods and possession of goods stolen from interstate commerce. They were later, on January 20, 1970, indicted by a federal grand jury sitting in the Eastern District of New York for

possession of completely different stolen goods, also shipped in interstate commerce.

On April 22, 1970, appellants appeared with counsel before Judge Coolahan in the United States District Court for New Jersey, retracted their original pleas of not guilty, and entered a plea of guilty to count one (the conspiracy count) of the New Jersey charges. They also consented to a transfer under F.R.Cr.P. 20 of the New York indictment and pled guilty to that charge.

Sentencing was scheduled for June 5, 1970, before Judge Whipple. Immediately after the court sentenced Bonnacci to 5 years on each count, the sentences to run consecutively, both appellants requested permission to withdraw their pleas, claiming they were under the impression that their sentences would be concurrent. The court vacated Bonnacci's sentence, deferred sentencing both defendants, and ordered adjournment until June 12, 1970.

After hearing argument on the question whether to permit withdrawal of the pleas, on June 12, 1970, the court denied the defendants' requests and sentenced both as Bonnacci had originally been sentenced. The court specifically stated to defense counsel that he had 120 days in which to petition the court for relief from the sentence. The court dismissed counts 2, 3, and 4 of the New Jersey indictment against both appellants.

On February 28, 1973, appellants filed motions in the district court under 28 U.S.C. § 2255 challenging their sentences and, alternatively, seeking under F.R.Cr.P. 32(d) to withdraw their guilty pleas. They appeal the denial of those motions. We affirm.

Appellants advance several legal theories, each articulating the theme that they are entitled to relief because they were under the impression at the time they pled guilty that they would be given concurrent sentences on the two counts. Essentially three legal bases are offered in support of this claim:

(1) the due process clause;

(2) F.R.Cr.P. 11; and

(3) F.R.Cr.P. 32(d).

## 1. DENIAL OF DUE PROCESS.

Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1972), declared that due process entitles a defendant pleading guilty to performance by the prosecutor of a promise that induced the plea. As could be expected, in view of the voluminous litigation in the civil law as to the definition and operation of a promise, *Santobello*, in turn, generated further litigation over what constitutes a promise, whether any promise had been made, and the effect of advice or assurance given by the defendant's own counsel.

In Masciola v. United States, 469 F.2d 1057 (3d Cir. 1972), we held that the due process lesson of *Santobello* was inapplicable when no promise or understanding had been breached by Government prosecution. We rejected the contention that relief was compelled because there was an "assurance" only by the defendant's counsel that a sentence would be imposed concurrently with a sentence Masciola was already serving. We also reasoned that such "predictions" by defendant's counsel did not render the plea involuntary. Other courts have faced similar questions and reached varying solutions. *Compare* Wellnitz v. Page, 420 F.2d 935 (10th Cir. 1970), *with* Castro v. United States, 396 F.2d 345 (9th Cir. 1968).

At the June 12, 1970, hearing in this case, the court inquired into the facts underlying appellants' alleged understanding that they would receive concurrent sentences. Their counsel, Samuel Bozza, testified that he never discussed any phase of the case with Assistant United States Attorney Koelzer, who represented the Government at the June 5, 1970, hearing. He explained that he initially was retained to represent the two defendants on the New Jersey charge. At that time, Assistant United States Attorney Goldstein, in

New Jersey, was handling the prosecution. Attorney Bozza said he later learned of the New York charge and then called Assistant United States Attorney Boyd in Brooklyn. While Boyd did not make any commitment, Bozza alleges he stated that if the New Jersey charges were transferred to New York the usual policy in the Brooklyn office would be to recommend 5 year sentences to be imposed concurrently. Attorney Bozza then spoke to Goldstein, who mentioned that he had talked to Boyd and both had agreed to have the New York indictment transferred to New Jersey. Bozza said he assumed, by virtue of Boyd's conversation with Goldstein, that the New York sentencing policy alluded to by Boyd would prevail in New Jersey.

When appellants asked Bozza what sentence he thought they would receive, he told them "there was a good probability of getting a concurrent sentence." This is the sole basis for appellants' claimed understanding. Assistant United States Attorney Boyd testified at the June 12 hearing that he never made any representation with regard to the "sentences to be granted to the defendants in this case."

This situation is quite similar to that presented to us in *Masciola*. Appellants apparently pleaded guilty in the expectation they would receive concurrent sentences on the New York and New Jersey indictments. That expectation, however, was based solely on the advice of their counsel. Thus, the appellants, unlike the defendant in *Santobello*, have not been misled by the prosecution in pleading guilty. Nor did they rely upon an actual understanding or agreement with Government counsel, the breach of which renders the sentence fundamentally unfair or which renders their pleas involuntary. For these reasons, we think appellants have not been denied due process.

Nevertheless, we believe that our district courts should take affirmative action to curb recurring situations which give rise to defendants' misapprehensions, although created by advice of their own counsel or otherwise, and produce an unwarranted and unrealized expectation of leniency. In this case, the court, at the hearing on June 5, inquired of both appellants whether "anybody promised you any leniency with regard to any sentence that this court might impose" and both replied in the negative. He further cautioned them:

> If they have [promised you leniency] I am putting you on notice right now that it is not binding on this Court. This Court will sentence you according to its own conscience and following the law, right?

The court, thereupon, sentenced Bonnacci to consecutive five year sentences. Bonnacci immediately stated that he wished to withdraw the plea because:

> It was supposed to run altogether; otherwise, I'd go to trial.

Paradiso, too, quickly gave similar notice that he wanted to withdraw his plea because he expected to receive concurrent sentences on the two charges.

In Walters v. Harris, 460 F.2d 988 (4th Cir. 1972), the Fourth Circuit was also confronted with appellant's contention that his plea of guilty was induced by an unkept promise of the Assistant United States Attorney. As a result, it urged district judges in its circuit thereafter to expand their rule 11 inquiry to ascertain the presence of plea negotiations, to advise the defendant that plea bargaining has been specifically approved by the United States Supreme Court, and that he may truthfully advise the court of any plea negotiations "without the slightest fear of incurring disapproval of the court." We note that at least one other court has reacted to the rationale of *Santobello* by adopting a court rule that plea negotiations must be plainly made a matter of record. In an effort to meet realistically this growing practice of plea negotiation, the Supreme Court of Pennsylvania has adopted a comprehensive rule applicable

throughout the state's judicial system for plea bargaining on the record.[1]

Even prior to *Santobello*, the California Supreme Court, although not imposing any specific procedure, required the terms of all plea bargains to appear of record. People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970). The desirability of making plea negotiations a matter of record before sentence, recognized by these courts, is also reflected in the American Bar Association Minimum Standards on Sentencing Alternatives and Procedures, approved draft, 1968, § 5.3 and ABA Standards, Pleas of Guilty, approved draft, 1968, § 1.5 and ABA Standards Relating to The Function of the Trial Judge, approved draft, 1972, § 4.1(b).

█ We believe that it is appropriate at this time for the district courts of this circuit to take similar prophylactic measures to cope with this problem. In connection with their rule 11 inquiry on a plea of guilty, district judges should in essence inform the defendant that plea bargaining is specifically approved by the court and that he may truthfully inform the court of any plea negotiations "without the slightest fear of incurring disapproval of the court." Inquiry should also be made of counsel for the parties as to any plea negotiations. Should inquiry reveal the presence of plea negotiations, counsel for the parties should be required to state plainly the terms of record and the defendant should state of record whether he understands them and concurs. The court, of course, is not obligated to accept any recommendation or bargain reached by the parties, and it should so inform the defendant when any bargain is disclosed. Compliance with this procedure should avoid ostensible claims by defendants of unfairness in the guilty plea process and minimize the escalating number of cases complaining of aborted plea bargains, involuntary pleas, or frustrated plea expectations.

## 2. COMPLIANCE WITH RULE 11.

This case also presents issues relating to the requirements of rule 11 and the proper role of a reviewing court in implementing them. Rule 11, in part states:

> The court may refuse to accept a plea of guilty, and shall not accept such plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

██ After a careful examination of the record we are satisfied that rule 11 was complied with under the standards we enunciated in United States v. Davis, 470 F.2d 1128 (3d Cir. 1972). In explaining the nature of the charges, the court read the substance of the indictments to which the defendants were pleading.[2] This is the procedure that

---

1. Rule 319(b) of Pennsylvania Rules of Criminal Procedure, 19 P.S.Appendix, adopted October 3, 1972, provides:
     (1) The trial judge shall not participate in the plea negotiations preceding an agreement.
     (2) When counsel for both sides have arrived at a plea agreement they shall state on the record in open court, in the presence of the defendant, the terms of the agreement. Thereupon the judge shall conduct an inquiry of the defendant on the record to determine whether he understands and concurs in the agreement.
     (3) If the judge is satisfied that the plea is understandingly and voluntarily tendered, he may accept the plea. If thereafter the judge decides not to concur in the plea agreement, he shall permit the defendant to withdraw his plea.

2. On April 22, 1970, the court first accepted guilty pleas to both counts. The judge addressed Bonnacci as to the New Jersey charges as follows:
     The Court: Well, Count I of the indictment states that on or about the 21st day of May, 1968 and continuously thereafter, up to and including the 1st

we approved in *Davis*. In Woodward v. United States, 426 F.2d 959 (3d Cir. 1970), this court stated:

> To satisfy itself that the defendant actually does comprehend the charges, the court must explain the meaning of the charge and what basic acts must be proved to establish guilt.

*Id.* at 962. That mandate does not preclude an explanation by reading the indictment. The district court should exercise its discretion in determining when additional explanation of the charge is necessary.[3]

> day of April, 1969, in this district, you, together with others named in the indictment did willfully and knowingly conspire and agree together with each other and with other persons whose names to the Grand Jury are unknown to commit an offense against the United States, that is to knowingly have in their possession good [sic] and chattels valued in excess of $100, knowing said goods and chattels to have been stolen. The said goods and chattels having been stolen and carried away from motor trucks while moving as being part of and constituting an interstate state shipment of freight, in violation of Section 659, Title 18 of the United States Code.
>
> In furtherance of said conspiracy and to effect the objects thereof, the defendants did commit the following overt acts.
>
> On April 1, 1969, the defendants Anthony Richard Bonnacci, Michael Joseph Paradiso and George Vincent Remini met at a warehouse located at 421 Schiller Street, Elizabeth. That on March 29th, 1969, the defendants Anthony Richard Bonnacci and George Vincent Remini, and others came to a warehouse located at 429 Schiller Street, Elizabeth, New Jersey, in violation of Section 371 of Title 18 of the United States Code.
>
> Now, in entering a plea of guilty, Mr. Bonnacci, you admit that you were guilty to this first count, do you understand that?
>
> Defendant Bonnacci: Yes.

The court then asked Paradiso whether he heard all the questions asked of Bonnacci, to which Paradiso responded in the affirmative and said that he had nothing to say with regard to the questions.

The court addressed both defendants with regard to the New York charges as follows:

We are also satisfied that the trial court made an adequate inquiry into the voluntariness of the plea. At the April 22, 1970, hearing, the court first questioned the defendants about the New Jersey indictment. Judge Coolahan explained to Bonnacci that he was entitled to a jury trial at which the Government would have to prove its case beyond a reasonable doubt; and that the guilty plea waived those rights. Similarly, he asked whether there were any promises or inducements or assurances of any sort, and whether the pleas were volun-

> The Court: Do you understand that this indictment charges both of you that on or about the 13th day of December, 1969, within the Eastern District of New York, the defendant, Michael Paradiso, and the defendant, Anthony Bonnacci and other named defendants therein had in their possession approximately 100 unfinished pieced goods and cut goods and various cartons and packages valued in excess of $100 which merchandise then stolen was moving as and constituted an interstate shipment of freight from New York to Miami, Florida, the defendants knowing the same to be stolen, and in violation of Title 18, United States Code, Section 659 and 2.
>
> Now, gentlemen, you understand that if the Court accepts this transfer, the only thing for you to do is enter a plea of guilty to this indictment which your counsel has indicated that you intend to do. Do you understand that?
>
> Both defendants responded affirmatively.

3. At least one other circuit has approved the procedure of reading the indictment in order to satisfy this element of rule 11. *See* Kress v. United States, 411 F.2d 16, 21 (8th Cir. 1969). Two circuits seem to say that reading the indictment is not enough to satisfy the requirement that the trial court ascertain the factual basis of the plea. *See* Majko v. United States, 457 F.2d 790, 791 (7th Cir. 1972); United States v. Cody, 438 F.2d 287 (8th Cir. 1971). There is, however, no indication that they would extend this holding to the element of the defendant's understanding of the nature of the charges. Halliday v. United States, 380 F.2d 270 (1st Cir. 1967), relied upon by appellants, is inapposite because the court did not in that case read the indictment in open court. Rather, it appears that the court merely determined that the defendant's counsel had *reviewed* the indictment with him.

tary and of defendant's own free will. Bonnacci responded specifically to each inquiry, satisfying the court that the plea was freely and voluntarily made. The court then asked Paradiso whether he heard the questions addressed to Bonnacci and whether his plea was of his own free will. Paradiso replied "yes" to both. The court then asked similar questions of both defendants with regard to the New York indictment.

As to the New York indictment, the court again at the hearing on June 5, 1970, advised the defendants of their rights to a jury trial and proof beyond a reasonable doubt. He also asked them whether there were any pleas, inducements, or other sort of coercion motivating their pleas. Again, each replied in the negative. At this point the court told defendants that it would not be bound by any agreement as to sentence or promise of leniency.

The trial court also made an adequate inquiry into the defendants' understanding of the consequences of the pleas. At the April 22, 1970 hearing, the trial court asked both defendants whether they understood that the maximum possible sentence on count 1 of the New Jersey indictment was 5 years and a $10,000 fine. They both said "yes." Similarly, both at that hearing and at the June 5 hearing, they said they understood that the maximum sentence on the New York charges was 10 years and a $5,000 fine.

■ We do not think rule 11 requires an explicit admonition by the court that sentences may be imposed consecutively. This power is implicit in the separate explanation of the possible sentence on each count. To avoid any possible misunderstanding and to minimize unnecessary appeals, it would be advisable for district courts to explicitly state that sentences can be consecutive; but we

will not impose any rigid rule to that effect.

■ Rule 11 does not impose any requirement that the defendant be informed prior to the acceptance of his plea of the actual sentence he will receive. No question of ineligibility for probation and parole is raised in this case. *See* Berry v. United States, 412 F.2d 189 (3d Cir. 1969).

The final element of rule 11, ascertainment of the factual basis for the plea, was also sufficiently met. At the April 22 hearing, immediately after reading count 1 of the New Jersey indictment to Bonnacci, the court asked him whether he understood that in entering a guilty plea he admitted guilt to that count. There was no specific questioning of Paradiso on this point with regard to the New Jersey charges, but the judge did ask Paradiso whether he had heard all the questions asked Bonnacci. That count did recite the facts of the alleged offense. At that same hearing both defendants, after having the New York indictment read to them, including its recitation of the facts of the offense, said that they understood that a guilty plea meant they admitted that they did the things charged in the indictment.

As the Supreme Court noted in McCarthy v. United States, 394 U.S. 459, 467 n. 20, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and this circuit has previously affirmed, the inquiry required by rule 11 must necessarily vary from case to case, and "'[m]atters of reality, and not mere ritual, should be controlling.'" *See* United States v. Davis, 470 F.2d at 1131. Reviewing the proceedings in this case, we are satisfied that there was an adequate inquiry into the factual basis for the plea. We decline to follow the precedents in several other courts that seem to indicate that a plea is invalid under rule 11 if the trial court does no more than read the indictment.[4] The

4. *See, e. g.,* Majko v. United States, 457 F. 2d 790, 791 (7th Cir. 1972); United States v. Cody, 438 F.2d 287 (8th Cir.

1971); United States v. Steele, 413 F.2d 967 (2d Cir. 1969).

adequacy of reading from the indictment will depend on the facts of the particular case.[5]

We do not reach the question whether the court's possession of Bonnacci's presentence report at the sentencing hearing on June 5, 1970, would be sufficient compliance with the rule requirement that the court satisfy itself of the factual basis for the plea.

### 3. WITHDRAWAL OF PLEA UNDER RULE 32(d).

Paradiso and Bonnacci also argue that they are entitled under rule 32(d) to withdraw their pleas. That rule provides:

> (d) Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

This circuit has established that different standards are to be applied in determining whether a plea may be withdrawn prior to sentencing than are to be applied to a request for withdrawal after the sentence. "In weighing motions for withdrawal of a guilty plea *before* sentencing, the test to be applied by the trial courts is fairness and justice." United States v. Stayton, 408 F. 2d 559, 561 (3d Cir. 1969). On the oth-

er hand, "a *post-sentence* motion should be denied unless 'manifest injustice' to the defendant will result." *Id.* Thus, although both determinations are committed to the discretion of the district court, the standard by which a post-sentence motion is judged is more rigorous. The more severe standard is applied to avoid motions for withdrawal based on disappointment in the terms of the sentence. *Id.* at 560. In light of this purpose, although appellants have made an effort to cast this question in terms of pre-sentence standards, we believe the trial court properly applied the post-sentence standard. The reason for the request in this case was clearly disappointment in the sentence the appellants expected the trial court to impose. We find no abuse of discretion in its conclusion that "manifest injustice" would not result from a denial of the requests to withdraw the pleas.

In light of our disposition of the merits, we need not consider the Government's contention that appellants waived their right to challenge their plea by failing to file an appeal within the 120 day time period that the court specified at the June 12, 1970, hearing. We note, however, that there is serious question whether the principle of United States ex rel. Callahan v. Follette, 418 F.2d 903 (2d Cir. 1969), applies because of Bonnacci's absence at the time the statement was made.

The judgment of the district court will be affirmed.

---

5. In Santobello v. New York, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1972), the Supreme Court stated in dictum that rule 11 "makes clear that the sentencing judge must develop *on the record*, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge." Although the suggested example is not compulsory, its merits are obvious and such procedure is highly desirable.