**JAHLIGHT DELSOL, Petitioner**
**vs.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Respondent**

Civil Misc. Nos. 44/2002, 88/2004

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

November 8, 2007

JAHLIGHT DELSOL, Petitioner, St. Croix, U.S. Virgin Islands, *Appearing Pro se.*

DOLACE MCCLEAN, ESQ., Assistant Attorney General, Virgin Islands Department of Justice, St. Thomas, U.S. Virgin Islands, *Attorney for the Respondent.*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(November 8, 2007)

### I. INTRODUCTION

This matter is before the Court on Jahlight Delsol's *pro se* Petition for Writ of Habeas Corpus, dated April 12, 2002, but not filed until May 17, 2002, alleging ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution. In his Petition, Mr. Delsol asserted that his defense counsel failed to properly prepare, advise and represent him in a criminal matter where he was charged, *inter alia,* with First Degree Murder. On June 29, 2007, this Court held an evidentiary hearing, giving all parties, including the Petitioner's trial defense counsel, an opportunity to present any testimony and other evidence with respect to Petitioner's claim. For reasons that follow, the Petition for Writ of Habeas Corpus is denied.

### II. PROCEDURAL POSTURE

■ On May 17, 2002, this matter was originally filed by Petitioner requesting relief in the form of habeas corpus and on July 29, 2002, Petitioner requested a copy of his file from his trial counsel. Accordingly, Orders, dated July 17, 2003 and September 18, 2003 respectively, were issued by the Court for trial counsel to respond to Petitioner's request for a copy of his file and other documents. On October 2, 2003, trial counsel certified that a full and complete copy of the file was sent to Petitioner, who was incarcerated at the Golden Grove Correctional Facility, St. Croix, U.S. Virgin Islands. Thereafter, this matter came on for a status conference on July 29, 2004, at which time trial counsel was not present and the Court determined that it would review the file and a make a decision based upon the pleadings. Next, on October 1, 2004, Petitioner filed a combined Petition for Writ of Habeas Corpus and Petition for Writ of Mandamus making the same arguments contained in his 2002 petitions. In an Order issued on November 22, 2004, the Court gave Petitioner the

opportunity to seek consolidation of the 2002 and 2004 filings or to state reasons as to why consolidation would be improper as a matter of law. No response was ever received by the Petitioner. Then, on September 11, 2006, Petitioner filed a Motion (*sic*) for Writ of Mandamus to compel performance in addressing the Petition for Writ of Habeas Corpus[1]. On November 30, 2006, the Court again held another status hearing, at which time the Court Ordered the Government to provide a copy of the Judgment and Commitment and the transcript from the November 26, 1999, Change of Plea Hearing held by then Honorable Judge, now Justice, Ive A. Swan.[2] On February 21, 2007, this matter came on for another status hearing, at which time counsel for the Government was ordered to submit the previously mentioned Judgment and transcript no later than March 9, 2007. Thereafter, on May 23, 2007, a final status hearing was held. At the conclusion of that hearing, the Court advised all parties that it would take under advisement the issue as to whether an evidentiary hearing was necessary. After ruling that such a hearing was indeed warranted, this Court, on June 29, 2007, held a full evidentiary hearing. At the hearing the Petitioner, Petitioner's former trial defense counsel, and counsel for the Government had an opportunity to present testimony, exhibits, witnesses and any other relevant evidence in support or in defense of the habeas corpus petition for relief due to "ineffective assistance of counsel."

## III. FACTUAL HISTORY

On August 3, 1998, the then 16-year-old Petitioner, Jahlight Delsol, was arrested and charged in Family Court on a two (2) count complaint with murder in the first degree, in violation of V.I. CODE ANN. tit. 14, § 922(a)(1), and possession of a dangerous weapon, during a crime of

---

[1] Petitioner's Motion for Writ of Mandamus was improperly brought before the Court. Petitioner's motion sought to compel this Court to exercise its own duties in addressing his claim. This was procedurally improper as mandamus is an extraordinary remedy that can only be used by an **appellate court** ". . . to prevent a trial court from usurping power that it lacks, to compel it to exercise authority when it has a duty to do so, to rectify a clear abuse of discretion, and to correct a clear error of law." *In re: Government of the Virgin Islands v. Thomas*, 341 F. Supp.2d 531, 534 (D.V.I. 2004). Therefore, the Court dismisses that portion of Petitioner's claim.

[2] After Judge Ive A. Swan became a Justice Designate of the Supreme Court of the Virgin Islands, this case was reassigned to the Undersigned.

violence, in violation of V.I. CODE ANN. tit. 14, § 2251(a)(2)(B). The Petitioner pled "Not Delinquent" to each count. On January 27, 1999, after hearing and pursuant to V.I. CODE ANN. tit. 5, § 2508(b), the Juvenile Division transferred the Petitioner to the Criminal Division of the Court, to be tried as an adult. On February 25, 1999, the Petitioner was again advised of his rights and arraigned, as an adult, on a two (2) count Information alleging the same offenses contained in the Juvenile Complaint. The Petitioner pled "Not Guilty" to each felony count. During the pendency of the criminal matter, the Government offered and Petitioner accepted a plea agreement whereby Petitioner would withdraw his prior "Not Guilty" plea and plead "Guilty" to Second Degree Murder, in violation of V.I. CODE ANN. tit. 14, § 922(b), and the Government would dismiss Count II. At the Change of Plea Hearing on November 26, 1999, the Court examined the Petitioner under oath, as set forth under FED. R. CRIM. P. 11. During this Rule 11 colloquy, an extensive array of questions was initially posed to determine whether Petitioner was knowingly and voluntarily entering into the plea. Prior to questioning the Petitioner, the Court succinctly stated that it was under no obligation to accept the terms of the plea and that all statements made by Petitioner were to be true and any false statements may constitute the crime of perjury, which is a separate crime and carries its own punishment. (Change of Plea Hr'g Tr. 3:24—4:23, Nov. 26, 1999). The questions posed to Petitioner covered such areas as: how much schooling Petitioner completed, whether Petitioner spoke English, whether Petitioner consumed any alcoholic beverages in the preceding 24 hours, and whether Petitioner ingested any narcotics or medication in the preceding 24 hours. (Change of Plea Hr'g Tr. 4:25—6:5). Furthermore, the Court thoroughly explained the minimum and maximum penalties for First and Second Degree Murder and also detailed the Government's burden of proof and the requisite elements for each of the alleged crimes. (Change of Plea Hr'g Tr. 6:6—8:6). The Court also informed Petitioner of all of his statutory and constitutional rights with respect to a trial by jury, right to appointed counsel, right to call and cross-examine witnesses, and rights to an appeal. The Court also advised Petitioner of his constitutional right not to testify and not produce witnesses, since the law never imposes any burden of proof to prove his innocence. (Change of Plea Hr'g Tr. 8:7—11:3). (Emphasis Provided). Significantly, the Court inquired as to whether Petitioner was satisfied with the advice he received from his

defense attorney; whether he was being coerced into pleading guilty; whether he was aware of the sentence recommendations of the Government; and whether any other agreements were made in order to induce/encourage Petitioner into the plea. (Change of Plea Hr'g Tr. 11:1—12:1). Additionally, during the colloquy the Government was required to proffer what they would have been able to prove had the matter gone to trial and then Petitioner was asked to affirm or deny the Government's offer of proof regarding the events underlying the crimes charged. The Petitioner did affirm the People's offer of proof, and thereafter, pled guilty to Second Degree Murder. The Court accepted Defendant's plea. (Change of Plea Hr'g Tr. 3:21—13:13). Sentencing was scheduled for February 16, 2000, and a pre-sentence report was ordered. On February 16, 2000, the sentencing was continued to give the Petitioner an opportunity to review the pre-sentence report. Finding no legal cause why sentencing should not be imposed, the Court, on April 27, 2000, heard recommendations by Counsel for the Government for ten (10) years incarceration, which was consistent with the Plea agreement. Additionally, the Court requested that counsel for the respective parties to confirm that the sentence recommendations made in the plea agreement were not binding upon the Court.[3] Requesting leniency for his client, trial counsel then urged the Court to sentence Petitioner to six (6) years, which was one (1) year more than the absolute statutory minimum. He also argued at considerable length the nature of the offenses committed, the relationship between the victim and the Petitioner, and Petitioner's state of mind at the time of the offenses. After a lengthy statement regarding the "bedeviling" factual scenario of the underlying offense, the Court

---

[3] THE COURT: They have a plea agreement but in the plea agreement there was a recommendation made.

[PROSECUTOR]: The recommendation is that it's ten years. Recommendation of the Government is ten years.

[DEFENSE COUNSEL]: The recommendation of the Government is ten years, he pleads to second degree murder—

THE COURT: He plead guilty to second degree murder, the Government recommended ten years. Ten years?

[PROSECUTOR]: Yes, Your Honor.

THE COURT: It was made clear at the outset that the recommendation is not binding upon the judge?

[DEFENSE COUNSEL]: Absolutely true, judge.

(Sentencing Tr. 12:9—13:2, April 27, 2000) (Emphasis Added).

sentenced Petitioner to twenty-five (25) years incarceration. This Petition for Writ of Habeas Corpus followed.

Guided by the prevailing precedence, the Court, on June 29, 2007, held an evidentiary hearing to precisely ascertain Petitioner's rationale in claiming that his trial counsel was ineffective. Petitioner testified and argued that, from his perspective, his trial counsel denied him access to various pieces of exculpatory evidence, including witness statements, autopsy, and police reports, and a toxicology report, theorizing that these items would have shown proof that he acted in self-defense, which would either have proven guilt of the lesser offense of voluntary manslaughter or may have even completely exonerated him. Contending that, had he known about those matters Petitioner argued he would not have pled guilty to second-degree murder. Conspicuously absent, however, from the record is any specific evidence that Petitioner's then trial counsel failed in zealously representing Petitioner's best interests throughout the pendency of the criminal matter. Also, Petitioner failed to specifically identify reasons entitling him to any *post-plea relief.* Instead, Petitioner rather only makes blanket statements that somehow he was unwillingly cajoled into accepting the guilty plea. In stark contrast, however, trial counsel maintained the exact opposite. Trial counsel presented testimony and exhibits, in order refute Petitioner's claim that self-defense was a viable defense theory. Trial counsel also enlightened this Court on the facts and circumstances surrounding the alleged offenses and consistently asserted that these various items that Petitioner identified as "exculpatory evidence" would have in fact strengthened the Government's case in proving first degree murder, particularly the aspect of premeditation, since Petitioner had a "cooling off" period before returning to the scene of the crime with a weapon. Moreover, Petitioner's trial counsel testified that the witness and police reports readily reflected that Petitioner was hot headed and steadfast in his resolve to physically attack the deceased by flagrantly ignoring and disobeying the officers' order for him to drop the weapon. This recalcitrant and belligerent behavior was engaged in by Petitioner while the victim/deceased complied with a similar order by law enforcement. Hence, at the time of the attack by Petitioner, the victim was unarmed. Furthermore, the underlying record from both the Change of Plea Hearing and the Sentencing Hearing firmly established that Petitioner was well aware of the facts and circumstances leading up to his arrest and subsequent plea agreement. In fact, Petitioner's own

affirmation during the Rule 11 colloquy of the events that transpired on August 3, 1998, when described by Counsel for the People, definitively established that Petitioner understood the crimes for which he was being charged and the proceedings against him. Moreover, Petitioner's own counsel, whom he now seeks to be declared ineffective, painstakingly described the same factual scenario in an attempt to rebut the cavalier factual information presented by Counsel for the People. The underlying record also conclusively establishes that Defense Counsel went above and beyond in ensuring that Petitioner received proper care and attention, considering that at the time Petitioner was a minor, who was charged as an adult. Furthermore, trial counsel not only consulted with Petitioner, who was a minor at all times, regarding the criminal matter, but also shared any and all information with Petitioner's mother and step-father.

## IV. ANALYSIS

The four (4) issues to be resolved by the Court are: (1) whether under prevailing precedence, Petitioner bears the burden of proving ineffective assistance of counsel; (2) whether a guilty plea entered pursuant to FED. R. CRIM. P. 11 can be reviewed if a colorable constitutional claim or manifest injustice is demonstrated; (3) whether the U.S. Supreme Court's decision in *Strickland* applies to guilty plea challenges based on ineffective assistance of counsel; and (4) whether a collateral evidentiary hearing or habeas corpus proceeding at the trial court level is generally required for "ineffective assistance of counsel" claims before an appellate court can review the matter on the merits.

### A. Under Prevailing Precedence Petitioner Bears the Burden of Proving Ineffective Assistance of Counsel.

As instructed by and in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *Government of the Virgin Islands v. Petersen*, 19 F. Supp. 2d 430, 39 V.I. 339 (D.V.I. 1998), the Court is to review the totality of the evidence in making its findings of fact and conclusions of law with respect to claims of ineffective assistance of counsel.

 The Sixth Amendment to the United States Constitution[4] provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law; and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defence.

The Counsel Clause, as the last phrase is commonly known, is a crucial element in our adversarial system of justice and in the pursuit of fairness in all proceedings against a particular individual. The United States Supreme Court has noted that the mere presence of an attorney is not sufficient to satisfy the protections of the Sixth Amendment, because an attorney's role in the justice system is that of a fundamental player, not a sideline spectator. Thus, the High Court has stated that, 'the right to counsel is the right to the effective assistance of counsel.' *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2063 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14, 90 S. Ct. 1441, 1449, n.14, 25 L. Ed. 2d 763 (1970). In determining whether this requirement has been met, the *Strickland* Court held that, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064; *see also Government of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574, 29 V.I. 410 (3d Cir. 1994) (applying the *Strickland* standard by judging "whether counsel's performance was so deficient that errors made were of a magnitude that the guarantees of the Sixth Amendment were not satisfied and the defendant was deprived of a fair trial"). Otherwise stated, an attorney shall provide "reasonably effective assistance" whereby an attorney has a duty, under "prevailing professional norms" to implement "such skill and knowledge as will render the trial a reliable adversarial testing process;" and one claiming ineffective assistance must show that the attorney's performance fell below this "objective stan-

---

[4] Under § 3 of the Revised Organic Act of 1954, found at 48 U.S.C. § 1561, the Sixth Amendment is extended to the Virgin Islands and "shall have the same force and effect" as applied within the United States or any state within the United States.

dard of reasonableness." *Id.* at 687-688, 104 S. Ct at 2064. Thus, <u>the burden falls upon the defendant</u> to prove this deficiency in effective representation, which, as the Court held, comprises two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S. Ct. at 2064. Additionally, the defendant, in proving ineffective assistance, is entitled to no presumptions. In contrast, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S. Ct. at 2065. In an attempt to avoid excessive scrutiny over counsel's performance and to avoid a plethora of post-trial challenges based on ineffective assistance, *Strickland* held that:

> ■ [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (citing *Michel v. State of Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)). In order to deem the attorneys' representation or lack thereof as ineffective rather a simple error in judgment, this highly deferential standard of review must be overcome. Accordingly, in issuing a directive to lower courts, the *Strickland* Court stated that:

> ■ Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the

particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690, 104 S. Ct. at 2066. Finally, mere errors made by counsel in the course of representation is insufficient to prevail on a claim for ineffective assistance of counsel and set aside a judgment, but rather, the errors made by counsel must be prejudicial to the defense. *Id.* at 691-692, 104 S. Ct. at 2066-2067. In other words, an ineffective assistance of counsel claim hinges on a finding that the deficient manner in which the representation was carried out had an adverse, prejudicial effect on the outcome of the criminal matter. *Id.* at 692-696, 104 S. Ct. at 2067-2069. Notwithstanding, the Court must tread carefully in order to avoid second-guessing counsel's sound strategic choices. Moreover, a crucial distinction exists between counsel's deficient performance warranting a finding of ineffective assistance and counsel's "unsuccessful defense" after "reasonable investigations" and "professional judgments." *See generally Strickland*, 466 U.S. at 689-692, 104 S. Ct. at 2065-2067. This, the Court held, balances the right of a defendant to effective assistance of counsel versus an attorney's independent judgment regarding the method of representation. In so holding, the Court stated that, "representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067.

## B. A guilty plea, entered pursuant to FED. R. CRIM. P. 11, can be reviewed on appeal, if a showing of a colorable constitutional claim or manifest injustice is demonstrated.

The Federal Rules of Criminal Procedure outlines the prerequisites for a defendant to enter a guilty plea to a criminal charge.

FED. R. CRIM. P. 11 outlines the specific procedure for a court to follow in accepting a plea of guilty or *nolo contendere*[5]. At issue in this matter is the attempt to withdraw a guilty plea, which is covered by FED. R. CRIM. P. 11(d)[6] & (e)[7]. In reviewing an appeal of a guilty plea entered pursuant to these Rules, the Court of Appeals for Third Circuit has made a distinction in the legal standard by which a defendant may succeed in such an appeal, depending upon at what stage the guilty plea was entered. In *United States v. Wilson*, 429 F.3d 455 (3d Cir. 2005), the Court held on one hand that, 'if a motion for withdrawal of a plea of guilty or *nolo contendere* is made before the sentence is imposed . . . the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason.' 429 F.3d at 458 (quoting *United States v. Martinez*, 785 F.2d 111, 114 (3d Cir. 1986). Furthermore, the *Wilson* Court outlined three-factors to be referred to in assessing whether a motion to withdraw a guilty plea, filed <u>before</u> a sentence is imposed, should be granted, which include: '1) whether the defendant asserts his innocence; 2) the strength of defendant's reasons for withdrawing the plea; and 3) whether the government would be prejudiced by the withdrawal.' *Id.* (quoting *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003)). On the other hand however, the Court held that 'a *post*-sentence motion should be denied unless manifest injustice to the defendant will result.' *Paradiso v. United States*, 482 F.2d 409, 416 (3d Cir. 1973) (quoting *United States v. Stayton*, 408 F.2d 559, 561 (3d Cir. 1969)). This more "rigorous" standard is reasoned on avoiding the potential for a back-handed motion to withdraw when a defendant is dissatisfied with the sentence. *See id.* Notwithstanding, at the time Petitioner was sentenced, V.I. CODE ANN. tit.

---

[5] The literal meaning of *nolo contendere* is "I do not wish to contend."

[6] FED. R. CRIM. P. 11(d) reads: Withdrawing a Guilty or Nolo Contedere Plea. A defendant may withdraw a plea of guilty or nolo contedere:

(1) before the court accepts the plea, for any reason or no reason; or

(2) after the court accepts the plea, but before it imposes sentence if:

(A) the court rejects a plea agreement under Rule 11(c)(5); or

(B) the defendant can show a fair and just reason for requesting the withdrawal.

[7] FED. R. CRIM. P. 11(e) reads: Finality of a Guilty or Nolo Contendere Plea. After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.

132

4, § 33[8] was in effect, which empowered the Appellate Division of the District Court of the Virgin Islands to entertain appellate jurisdiction over all appeals, <u>except convictions based on a guilty plea</u>, arising under the then Territorial, now Superior, Court of the Virgin Islands. In *Luke v. Government of the Virgin Islands*, 921 F. Supp. 302, 34 V.I. 112 (D.V.I. 1996), the Appellate Division of the District Court stated that a <u>post-sentence</u> challenge to a guilty plea is appropriate whereupon a "'<u>colorable constitutional claim</u>'" is articulated, justifying the Court to entertain jurisdiction in considering the appeal. *(Emphasis Added). See Luke*, 921 F. Supp. at 303-304. However, V.I. CODE ANN. tit. 4, § 33 was amended[9], whereby the Supreme Court of the Virgin Islands assumed jurisdiction over all appeals from the Superior Court, but did not specifically exempt convictions entered pursuant to a guilty plea from being reviewed, as the previous statute so reflected. Whether intentional or mere oversight by the Legislature and whether the case law follows despite the omission of the amended statutory language need not be decided in addressing the instant petition, as Petitioner is claiming that <u>at the time of his entering of a guilty plea,</u> he was misinformed as to the quantity and quality of the evidence against him and in support thereof. This, he claims, amounted to ineffective assistance of counsel, a colorable claim grounded in the Sixth Amendment of the Constitution. Therefore, the pre-existing § 33 and *Luke* are applicable and Petitioner's writ of habeas corpus or any subsequent appeals can be reviewed.

### C. The U.S. Supreme Court's decision in *Strickland* applies to guilty plea challenges based on ineffective assistance of counsel

In *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the U.S. Supreme Court applied the standard set forth in *Strickland* to guilty plea challenges based on ineffective assistance of counsel. After reiterating the longstanding test in determining whether a guilty plea is voluntary and knowing, *see Hill*, 474 U.S. at 56, 106 S. Ct. at 369, the Court applied the rationale in *Strickland* by stating that,

---

[8] V.I. CODE ANN. tit. 4, § 33. —Amended Feb 8, 1965, No. 1291, § 10, Sess. L. 1965, Pt. I, p. 10; Oct. 25, 1972, No. 3320, § 2, Sess. L. 1972. p. 466; Sept. 9, 1976, No. 3876, § 5, Sess. L. 1976, p. 197.

[9] V.I. CODE ANN. tit. 4, § 33. —Added Oct. 29, 2004, No. 6687, § 2, Sess. L. 2004, p. 186; amended Mar. 5, 2005, No. 6730, § 53, Sess. L. 2005, p. 136.

 We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in [*McMann v. Richardson*, 397 U.S. at 771, 90 S. Ct. at 1449 (1970) (holding that a defendant who is represented by counsel during the plea process and accordingly enters the plea under such advice, the voluntariness of the plea depends on whether the counsel's advice "was within the range of competence demanded of attorneys in criminal cases") and *Tollet v. Henderson*, 411 U.S. 258, 267 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (holding that a defendant pleading guilty under counsel's advice "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.")]. The second or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 58-59, 106 S. Ct. at 371. Moreover, in further narrowing the scope of the prejudice prong of the *Strickland* analysis to claims, such as in the instant matter "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* In the instant matter, Petitioner has challenged his guilty plea based on his trial counsel's alleged ineffectiveness, thus the *Strickland* standard previously detailed is instructive and applicable.

## D. A collateral evidentiary hearing or habeas corpus proceeding at the trial court level is generally required for "ineffective assistance of counsel" claims before an appellate court can review the matter on the merits.

 In reviewing a claim for ineffective assistance of counsel, the Court of Appeals for the Third Circuit has held that, "it has long been the practice of this court to defer the issue of ineffectiveness of trial counsel

to a collateral attack." *U.S. v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003). The Court held this to be the more sound and logical approach, because the Judge who presided over the initial criminal matter was able to observe first-hand the defending attorney's actions and can determine at the latter juncture whether those actions throughout the trial were ineffective and prejudicial. *See Thornton*, 327 F.3d at 272. Nevertheless, such a claim *may* be appropriate on <u>direct appeal</u> when the underlying record is sufficient and provides the requisite proof in order to proceed in determining issues of attorney deficiency and prejudice. *Id.* at 271; *see also Government of the Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir. 1984) (a direct appeal, where the Court appropriately addressed the merits of a claim for ineffective assistance of counsel, because the underlying trial record was adequate). Incorporating a recent decision by the U.S. Supreme Court, which explained the rationale of why a collateral proceeding as opposed to a direct appeal is the more appropriate avenue for addressing ineffective assistance claims, the Third Circuit cited the following,

> When an ineffective-assistance claim is brought on appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under *Strickland v. Washington* [citation omitted], a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.

*Thornton*, 327 F.3d at 272 (citing *Massaro v. United States*, 538 U.S. 500, 504-505, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003)). In a similar matter, where the claim asserted was that counsel negligently or intentionally misled his client about material terms of a plea agreement, the U.S. Court of

Appeals for the Third Circuit, on remand[10], mandated that an evidentiary hearing be held in order to properly assess the merits of the claim. *See Government of the Virgin Islands v. Petersen*, 19 F. Supp. 2d 430, 438, 39 V.I. 339 (D.V.I. 1998). The Court in *Petersen* stated that during such a hearing, the court ". . . was required to take sworn testimony from any relevant witnesses including, at a minimum, the defendant and the attorney charged with the misfeasance or malfeasance. *Id.* Here, the Petitioner addressed his "ineffective assistance of counsel" claim in an appropriate collateral post-trial evidentiary hearing.

## V. CONCLUSION

■ Recapitulating, the Petitioner, Jahlight Delsol, was properly counseled and received effective assistance throughout the pendency of his criminal matter. Petitioner's plea was made in accordance with FED. R. CRIM. P. 11, which is the prevailing precedent and procedure that requires all guilty pleas entered into to be voluntary and knowingly. Accordingly, the Rule 11 colloquy firmly established that: 1) Petitioner understood the nature of the plea; 2) the Court was free to reject the plea in its entirety and proceed to trial and 3) Petitioner entered a plea of guilty knowingly and voluntarily. Moreover, the Court explicitly noted that although Counsel for both parties made recommendations as to the sentence, the Court was free to disregard such recommendations and impose the maximum penalty in accordance with law[11]. Thus, the record is abundantly clear that Petitioner was painstakingly explained the consequences of his "guilty plea" agreement. Finally, Petitioner failed to present evidence to satisfy the burden of proof announced in *Strickland* in order to succeed on his claim of ineffective assistance counsel. *A fortiori,* the petition for writ of habeas corpus for "ineffective assistance of counsel" is denied.

---

[10] *United States v. Petersen*, No. 95-7624, 92 F.3d 1174 (3d Cir. 1996) (unpublished opinion).

[11] Petitioner was explained the minimum and maximum sentence the Court could impose, as provided for by statute, which was no less than five (5) years, but no maximum penalty. (Change of Plea Hr'g Tr. 6-10—6-14).